[No. 26714. Department One. December 22, 1937.]

EFFIE AGNES KIRK, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

*Virgil Peringer,* for appellant.

*The Attorney General* and *J. A. Kavaney, Assistant,* for respondent.

GERAGHTY, J.—The claimant is the widow of Kenneth M. Kirk, who died as the result of an injury sustained while felling a tree. Her claim for compensation under the workmen's compensation act was denied, first by the supervisor of industrial insurance of the department of labor and industries, and thereafter on rehearing by the joint board of the department. On appeal to the superior court, the decision of the joint board was sustained. She appeals to this court.

The case was heard in the superior court on the departmental record, which includes the testimony taken at the joint hearing.

[1] Reported in 74 P. (2d) 227.

Kirk, at the time of the accident resulting in his death, was engaged for the day, Sunday, September 15, 1935, with William A. Kiser in procuring firewood to be loaded on a truck and brought to Wenatchee at the close of the day's work. Kiser testified that he was in the wood business in the summer and fall of 1935; that on two different occasions, in the early part of 1935, Kirk had accompanied him to help open a road which had been blocked by snow. Asked if he had paid for this work, he answered that Kirk was out of wood, and as he, Kiser, drove by Kirk's place on his way home, he unloaded half a load of wood for him. Kirk had worked for him on two other days, a few hours each time, in connection with a waterpipe in the street in front of Kiser's property in Wenatchee. Asked if there had been some agreement for payment for this work, he answered that Kirk had said, "Never mind, I will have to have some wood this fall." Kiser testified that, shortly before September 15th, Kirk had asked him how he was getting along and said "he wouldn't mind going up with me some day when I was going up." He did not hire him at that time. Asked as to his arrangement with Kirk for September 15th, he testified:

"Q. What was Mr. Kirk to have of that—anything, or just a credit? A. We had no agreement as to compensation on that part of it. I couldn't say. Q. I didn't ask you how much, but what was he to get—wood or money? A. We hadn't made any agreement. I suppose, of course, as far as that is concerned, there was no agreement made as to what it would be. Q. You supposed it would be wood? A. Well, of course, he planned on getting wood later in the fall of me when he needed it. Q. You expected to pay him for what he did that day and what he had done, the previous employment in Wenatchee, in wood? A. Well, of course, I expected, I always tried to compensate, but as far as, there wasn't any agreement what it would

be at that time. Q. The amount of compensation wasn't discussed? A. No. Q. And you trusted each other to be fair to each other, didn't you? A. Yes."

The claimant, Mrs. Kirk, testifying as to the circumstances connected with her husband's engagement to accompany Kiser on the day of the accident, said:

"He [Kiser] came out after him Saturday evening about dusk and asked him if he would go and help him to go and get wood, or could go and help him get wood. . . . I was in the kitchen when Mr. Kiser called, and Mr. Kiser and Kenneth exchanged greetings like they always did and I heard him ask Kenneth if he would go with him Sunday or if he had anything to do Sunday and Kenneth said no, and he wanted to know then if he could go to help him with the cord wood and he said he guessed he could because he never had anything to do as far as he knew. . . . Never had a job. . . . For Sunday. . . . Kenneth told Mr. Kiser he guessed he could go—might just as well go, so Mr. Kiser and Kenneth made arrangements for him to meet him at his place at six o'clock Sunday morning. . . ."

After hearing this conversation, she remarked to her husband that she understood he had a job for the following day. He answered, "Yes."

As to the prior occasions on which Kirk assisted Kiser for short periods, she said:

"Kenneth would go up there and work and they would get wood and he would take it out in wood and when he came by he would always leave Kenneth his share of the wood. That is the way they always did except the one time. Q. What happened that one time? A. What he had on the truck at that time he had sold and he did not have enough on there to pay Kenneth in wood and gave him some change this time to settle for that."

She stated that for his earlier work her husband was paid in wood at the rate of twenty-five cents an hour.

In his wood business, Kiser was assisted by a minor son. Otherwise, he had no employees and had filed no payroll with the department of labor and industries.

■ The question is whether, under the facts, Kirk was a workman within the meaning of the workmen's compensation act. The statute, Rem. Rev. Stat., § 7675 [P. C. § 3470], defines "workman" as meaning:

". . . every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment: . . ."

Construing this definition, we said, in *Hillestad v. Industrial Ins. Commission*, 80 Wash. 426, 141 Pac. 913, Ann. Cas. 1916B, 789:

"The law in its tenor and terms contemplates that the relation between employer and employee shall possess some element of certainty. It implies, if indeed it does not literally provide, that there shall be an actual contractual relation between the parties— that is, an agreement to labor for an agreed wage or compensation. The tax put upon an industry is determined by the pay roll."

In passing upon the question whether a claimant came within the terms of the Oklahoma compensation act, the supreme court of that state, in *Harris v. Oklahoma Natural Gas Co.*, 91 Okla. 39, 216 Pac. 116, stated a fundamental rule to be borne in mind in cases of this character:

"Workmen's Compensation Acts are remedial in character, and should receive a liberal construction in order to effectuate their purposes and objects, but they should not be amended by judicial construction upon an attentuated theory of inclusion. Persons entitled to the benefits of the act should be favored by a liberal interpretation of its provisions, but for this very reason they should be held to strict proof of their title as beneficiaries."

The necessary elements of certainty required to establish the relation of employer and employee are lacking here. There was no agreement to labor for an agreed wage or compensation, an essential element, since the tax upon an industry is based upon the payroll of the employer.

Accepting at face value the claimant's testimony that, on the three former occasions where her husband had, for brief periods, assisted Kiser, he was paid in wood at the rate of twenty-five cents an hour, there is no evidence in the record of any agreement for definite compensation for the trip to the woods on the fatal Sunday. Kiser testified there was no agreement. Kirk had said to Kiser a few days earlier that he would like to accompany him to the woods some day when he was going up. They were neighbors and acquaintances, and the most that can be said of the agreement is that Kirk wished to go along some day, when not otherwise employed, with the expectation, it may be, that Kiser would reciprocate for whatever service he might render by delivery of fire wood, the amount dependent altogether on Kiser's good will.

The relation of the parties, casual and indefinite, was not that of employer and employee within the meaning of the act.

In reviewing the case, it is to be borne in mind that the statute, Rem. Rev. Stat., § 7697 [P. C. § 3488], makes the decision of the department *prima facie* correct. The decision of the department was confirmed by the superior court. The weight of the evidence supports the departmental decision.

The judgment is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and SIMPSON, JJ., concur.