[No. 29458. *En Banc.* April 27, 1945.]

*In the Matter of the Eligibility of* ALEX JULLIN.
E. B. RILEY, *as Commissioner of Unemployment Compensation and Placement, Appellant,* v. ST. PAUL & TACOMA LUMBER COMPANY, *Respondent.*[1]

[1]Reported in 158 P. (2d) 319; 160 P. (2d) 1023.

*The Attorney General* and *George W. Wilkins, Assistant,* for appellant.

*Grosscup, Morrow & Ambler,* for respondent.

STEINERT, J.—This proceeding had its origin in a claim filed by Alex Jullin on August 17, 1943, for benefits under the unemployment compensation act (chapter 162, p. 574, Laws of 1937, as amended by chapter 214, p. 818, Laws of 1939 [Rem. Rev. Stat. (Sup.), §§ 9998-101 to 9998-124, inclusive], as further amended by chapter 253, p. 870, Laws of 1941 [Rem. Supp. 1941, §§ 9998-103a to 9998-123a, inclusive], and as last amended, prior to the commencement of this proceeding, by chapter 127, p. 291, Laws of 1943

[Rem. Supp. 1943, §§ 9998-103a to 9998-119q, inclusive]).
A companion proceeding, *In re Baxter, post* p. 935, had its
origin in a claim filed by Clarence Baxter on June 1, 1943.
The two causes were consolidated for hearing before the
administrative appeal tribunal, which rendered one de-
cision covering both causes.

For brevity, future references herein to the unemploy-
ment compensation act will be made only to the sections as
numbered in Rem. Supp. 1943, unless otherwise necessary.

The claim filed by Jullin showed on its face that he had
been "separated from work," that is, he had become un-
employed, on August 12, 1943, *just five days prior to the
filing of his claim.* The importance of this fact will appear
later.

On receipt of the claim, the unemployment compensation
division, a subordinate division of the office of unemploy-
ment compensation and placement, and hereinafter re-
ferred to as the Division, purporting to act under the au-
thority of Rem. Supp. 1943, § 9998-106b, made what is
termed therein an "initial determination" declaring that
"benefits are potentially payable under the law" to the
claimant, in a specified weekly benefit amount payable, and
to the extent of a specified maximum total amount of
benefits *potentially payable,* during the ensuing "benefit
year."

The term "benefit year" is defined in Rem. Supp. 1943,
§ 9998-119o, as follows:

" 'Benefit Year,' with respect to any individual means
the fifty-two consecutive week period beginning with the
first day of the week with respect to which the individual
first files a valid claim for benefits, and thereafter, the fifty-
two consecutive week period beginning with the first day
of the first week with respect to which the individual next
files a valid claim for benefits after the termination of his
last preceding benefit year. . . . "

In this instance, Jullin's "benefit year," as so defined,
would (if the claim were otherwise valid) extend, as found
by the Division, from August 17, 1943, to *August 17, 1944.*

The claimant's weekly benefit amount, *potentially payable*, was fixed by the Division in its "initial determination" at fifteen dollars, presumably in accordance with Rem. Supp. 1943, § 9998-103b, which provides:

"An individual's 'weekly benefit amount' shall be an amount equal to one-twentieth (1/20) of his total wages during that quarter of his *base year* in which such total wages *were highest,* except that if such amount is more than fifteen dollars ($15.00) the weekly benefit amount shall be deemed to be fifteen dollars ($15.00) . . ." (Italics ours.)

The claimant's maximum total amount of benefits, *potentially payable,* was likewise and at the same time fixed by the Division at two hundred forty dollars, presumably in accordance with Rem. Supp. 1943, § 9998-103d.

The term "base year," referred to above, is defined in Rem. Supp. 1943, § 9998-119p, thus:

" 'Base year' means the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year."

The term "calendar quarter," as defined in Rem. Supp. 1943, § 9998-119q, "means the period of three consecutive calendar months ending on March 31, June 30, September 30, or December 31."

Under these statutory definitions, Jullin's "base year," as determined by the Division, ran from April 1, 1942, to April 1, 1943, while, as stated before, his "benefit year" extended from August 17, 1943, to August 17, 1944; and, according to that same "determination," the highest amount of wages received by Jullin during any quarter of his "base year" was $1,091.31, which he had earned while in the employ of St. Paul & Tacoma Lumber Company, the *respondent* in the present appeal.

The record discloses, and it is not disputed, that Jullin, voluntarily and while work was available to him, quit the employ of St. Paul & Tacoma Lumber Company on December 19, 1942, eight months prior to the filing of his claim; that he thereafter held several jobs in succession; and that his last employment prior to filing his claim was with May-

wood Logging Company, for whom he worked just twelve days, from August 1, 1943, through August 12th of the same year. The St. Paul & Tacoma Lumber Company was therefore, and in the record has been designated as, the claimant's "principal employer" during his *base year*, and the Maywood Logging Company was, and has been designated as, his "most recent employer" referent to the commencement day of his "benefit year" as above described.

On completion of its "initial determination," referred to above, the Division gave notice thereof to both the St. Paul & Tacoma Lumber Company as the "principal employer," and the Maywood Logging Company as the "most recent employer." Thereupon the St. Paul & Tacoma Lumber Company, respondent here, being an "interested party" under the statute (Rem. Supp. 1943, § 9998-106b) as interpreted by the commissioner of the office of unemployment compensation and placement, and deeming itself aggrieved by the "initial determination" made by the Division, at once appealed to the appeal tribunal which had been established by the commissioner.

Upon the hearing before the appeal tribunal on October 22, 1943, the Division offered in evidence certain of its office documents consisting of (1) the initial claim for benefits signed and filed by Jullin on August 17, 1943, stating therein that he was unemployed, was able to work, and was available for work, and that he thereby registered for work; (2) the "initial determination" made by the Division with reference to benefits *potentially* payable; (3) the notice of such determination, copies of which had been sent to the last employer, Maywood Logging Company, and to the "principal employer," St. Paul & Tacoma Lumber Company, respectively; (4) a statement of Jullin's wage credits during the *base year*, showing that the highest amount of wages received by him during any calendar quarter of that base year was $1,091.31, which he had earned while in the employ of the St. Paul & Tacoma Lumber Company; (5) Jullin's statement of the reason for his discharge by the Maywood Logging Company (to the effect that the company had charged him with an act of neg-

ligence, but as to which he alleged that he was wholly without fault); (6) the "determination of denial of benefits" to the claimant (but stating therein that there was no *disqualifying factor*) made by the Division on September 18, 1943; and (7) the office claim-record card with respect to Jullin's claim, showing the various steps taken in the entire proceeding from the time of filing the claim to the entry of the commissioner's final decision affirming the action of the appeal tribunal. This last document, the office claim-record card, contained a numbered list of printed headings calling for information to be supplied, and a form of "certification" to be made, and *signed* by the claimant. The body of that certificate reads as follows:

"Certification of Waiting Period: I claim benefits under the Washington Unemployment Compensation Law and declare that I am unemployed, able to work, available for work, and I hereby register for work. I have refused no job offered me nor have I failed to apply for any job of which I was notified by the State Employment Office and I have performed no work and earned no wages since I last registered, except as indicated below [no exceptions were indicated]. I have read and understand the notice which is a part of my Identification Card."

Beneath these numbered headings and form of certificate was a space numbered 26 and headed "Claimant's Signature to the above Certification." There is no signature of the claimant in that, or in any other, place on the claim-record card.

The only oral testimony introduced upon the hearing before the appeal tribunal was that of the "Chief of Benefits" of the office of unemployment compensation and placement, which merely explained the position taken by the department with respect to its interpretation of Rem. Supp. 1943, § 9998-106b, relating to the "initial determination" and the notice thereof to the employer.

At the conclusion of the Division's introduction of its documentary evidence above mentioned, the respondent herein, St. Paul & Tacoma Lumber Company, interposed a motion that the "initial determination" of benefits potentially payable to Jullin be canceled and voided and that

the records of the Division be corrected so as to reflect such cancellation and, further, to reflect the elimination therefrom of any showing that either a "benefit year" or a "base year" had been fixed with reference to Jullin's claim. The motion was based upon a number of grounds, the substance of which, so far as the present appeal is concerned, was that there was no showing that Jullin was eligible to receive any benefits under his claim and, further, that no *valid* claim had ever been filed by him.

It is a conceded fact in this case that the Division did not allow, and has never paid, Jullin any benefits whatever under his claim, and that his claim was denied. The reason for this appears to be, as specifically found by the appeal tribunal, that "the record shows that after filing his claim the claimant made no certification for either waiting period credit or benefits to the date of this hearing [October 22, 1943]."

At the conclusion of the hearing before the appeal tribunal, that forum on December 29, 1943, made findings culminating in a decision denying respondent's motion and affirming the "validity" of Jullin's claim and the "initial determination" establishing his base and benefit years. The findings and decision at the same time established the same result with respect to Baxter's claim and respondent's motion in reference thereto. That decision was affirmed by the commissioner on January 18, 1944.

The respondent herein thereupon appealed to the superior court for Pierce county, where a hearing was held upon the departmental record pursuant to Rem. Supp. 1943, § 9998-106i. After such hearing, the superior court on July 25, 1944, entered judgment reciting, as findings: (1) that at the time the claimant Jullin filed his claim he was *ineligible,* not having at that time completed the required waiting week; (2) that no valid claim for benefits was filed by the claimant with the unemployment compensation division; (3) that the establishment of a benefit year and consequent base year by the Division for the claimant was based upon an uncompleted or invalid claim for benefits; (4) that the commissioner's decision of Janu-

ary 18, 1944, affirming the written decision of the appeal tribunal dated December 29, 1943, is erroneous in law; and (5) that the motion of the appellant (respondent here) made at the hearing before the appeal tribunal on October 22, 1943, is a proper motion and should have been granted. From those findings the superior court ordered and adjudged: (1) that the "initial determination" be canceled and voided; (2) that the records in the office of the Division be corrected so as to reflect the cancellation of the "initial determination" and of benefits *potentially payable* thereunder; and (3) that there be eliminated from the records of the Division any showing of a fixation of either a "benefit year" or a "base year" for the claimant by reason of the "initial determination" of benefits *potentially* payable to him. The judgment further awarded to the respondent herein an attorney's fee of two hundred dollars. Similar, but separate, findings and judgment were made and entered with reference to Baxter's claim.

From each of those judgments the commissioner on July 25, 1944, appealed to this court.

In order that we may have a clear understanding of the issue involved upon this appeal, it may be well to give a brief summary of the foregoing factual situation, stated in orderly sequence: Prior to December 19, 1942, Jullin, the claimant, was employed by St. Paul & Tacoma Lumber Company. While so employed he earned during the last "calendar quarter" of 1942 wages amounting to $1,091.31, which was the highest amount earned by him in any "calendar quarter" involved in this proceeding. He quit the employ of that company on December 19, 1942, voluntarily and while work was there available to him. Thereafter, he was engaged upon several jobs for different employers in succession. On August 1, 1943, he entered the employ of Maywood Logging Company and worked for that company until August 12, 1943, when he was discharged.

On August 17, 1943, *five days* after his discharge, he filed his claim for unemployment compensation benefits. At no time, however, did he make the necessary certification of waiting period. The Division nevertheless accepted his

claim and on August 25, 1943, made an "initial determination" declaring that benefits were *potentially payable* to Jullin, during his "benefit year" fixed as extending from August 17, 1943 (the date of filing the claim), to August 17, 1944, computed upon the basis of the highest amount of total wages received by him during any calendar quarter of his "base year," which was contemporaneously fixed as extending from April 1, 1942, to April 1, 1943. Jullin took no further steps to perfect his claim and for that reason the Division eventually denied the claim and has never allowed or paid him any weekly benefits during his "benefit year" as fixed by the Division.

The St. Paul & Tacoma Lumber Company promptly appealed from the "initial determination" of the Division relative to benefits *potentially payable* to the claimant during his "benefit year" as established by the Division and computed on the basis of the highest calendar quarter amount received by him during his purported "base year." The appeal was decided adversely to the respondent, which was the "principal employer" of Jullin during the alleged "base year." In consequence of that decision, the "initial determination" of the Division, while allowing Jullin no weekly benefits upon his claim as filed, nevertheless still stood upon the records of the Division as the basis for the payment of any subsequent claim for weekly benefits which Jullin might have made during his fixed "benefit year" expiring August 17, 1944. That was the situation when the cause reached the superior court on the appeal of the respondent herein and also when the judgment reversing the action of the Division was entered by the superior court on July 18, 1944.

The issue here involved is this: May the Division, upon the filing of any claim for unemployment compensation benefits, make an "initial determination" of weekly and maximum total benefits "potentially payable" to the individual filing such claim, which "determination," when once made, shall be operative, permanent, and controlling during the period of such individual's "benefit year" as established by the Division in such "initial determination," on the basis

of such individual's "base year" likewise so established, regardless of whether the claim as filed is valid or invalid upon its face or is subsequently shown to be so, and regardless of whether or not such initial claim is eventually allowed and weekly benefits paid thereon by the office of unemployment compensation and placement?

The appellant commissioner contends that the Division has such right. The respondent contends, as the superior court decided, that the Division has no such authority.

From what has been shown above, it is apparent that Jullin's purported "benefit year," extending from August 17, 1943, to August 17, 1944, expired by its terms very shortly after the present appeal was taken by the commissioner. Inasmuch as Jullin has never been allowed or paid anything on his initial claim, and since he himself has taken no appeal from the action of the Division denying his claim and refusing to pay him any weekly benefits, and since the time for his making any further claim based upon the "initial determination" has now fully expired, all questions affecting that claim and all questions that have any possible connection therewith have become moot. For that reason alone, the commissioner's appeal to this court could very properly be dismissed.

However, the question here involved is one which, unless now determined, will necessarily recur, and since both parties herein have devoted themselves solely to the merits of the case, we are justified in now deciding, as we would at some time in the future be required to decide, the matter on the basis of its merits.

The initial procedure with respect to claims for benefits under the unemployment compensation act is prescribed by Rem. Supp. 1943, § 9998-106b, as follows:

"A representative designated by the Commissioner shall take the claim. The Unemployment Compensation Division shall promptly make an initial determination thereon which shall be a determination with respect to whether or not benefits are potentially payable, the weekly benefit amount payable and the maximum amount of benefits potentially payable. The claimant, his most recent employing unit, as stated by the claimant, and any other interested party

which the Commissioner by regulation prescribes shall be notified promptly by the delivery of written notice of the initial determination. The initial determination shall fix the general conditions under which benefits shall be paid during any period of unemployment occurring within the ensuing benefit year. An individual who has received an initial determination finding that benefits are potentially payable to him, shall during his benefit year receive benefits in accordance with such initial determination *with respect to any week as to which the conditions of section 4 [Rem. Supp. 1943, § 9998-104] of this act are met unless the individual is disqualified by the provisions of section 5 [Rem. Supp. 1943, § 9998-105] hereof.* The claimant, his most recent employing unit, or any such interested party to the initial determination may file an appeal from such determination with the Commissioner within ten days after the date of notification or mailing, whichever is earlier, of such initial determination to his last known address. If, upon such initial determination, benefits are allowed, but an appeal is filed relative to the maximum amount of benefits potentially payable or the weekly benefit amount, benefits may, nevertheless, be paid to the extent of the minimum potential benefit amount or weekly benefit amount which the Division of Unemployment Compensation or any party to the appeal shall assert is due the claimant. If the payment of benefits shall be denied to any individual for any week within a benefit year covered by an initial determination, the claimant shall be promptly notified of the denial and the reasons therefor, and may appeal therefrom in accordance with the procedure herein described for appeals from initial determination. *A notice that benefits have been denied, delivered to the claimant in accordance with the foregoing section, shall suffice for all subsequent weeks of unemployment during which the condition upon which the denial was based shall continue* and an appeal taken from such notice of denial shall be deemed to be an appeal as to such subsequent weeks. When the Commissioner shall determine that the cause for any denial of benefits has been removed, he shall inform the claimant, his most recent employing unit, and any other interested party, of his decision together with the date of the removal of such cause of denial, and the claimant, his most recent employing unit, or such other interested party, may appeal therefrom within ten days after communication or mailing of such notice, whichever is the earlier. In the absence of an appeal therefrom, a determination by the Commissioner

that the cause for denial of benefits has been removed shall make any pending appeal inapplicable to any period subsequent to the date so determined by the Commissioner, and benefits may be paid for such subsequent period if the claimant is otherwise eligible. Except as herein specifically provided, if an appeal is taken with respect to any claim, benefits shall not be paid to the claimant prior to the final determination of such appeal. *If no appeal be taken from* the initial determination, *a notice of denial of benefits,* or from the Commissioner's decision of removal of cause of denial of benefits within the time allowed by the provisions of this section for appeal therefrom, *said* initial determination, *notice of denial of benefits* or Commissioner's decision of removal of cause of denial of benefits, as the case may be, *shall be conclusively deemed to be just and correct* except as hereinafter provided in respect to consideration by the Commissioner of an initial determination. . . . " (Italics ours.)

Section 4 of the act (Rem. Supp. 1943, § 9998-104), referred to in the last-quoted section, prescribes the benefit eligibility conditions as follows:

"An unemployed individual shall be eligible to receive benefits with respect to any week *only* if the Commissioner finds that:

"(a) He has registered for work at and *thereafter has continued to report at an employment office in accordance with such regulation as the Commissioner may prescribe.*

. . .

"(b) He has made a claim for benefits in accordance with the provisions of section 6 (a) of this act;

"(c) He is able to work, and is available for work.

. . .

"(d) *He has been unemployed for a waiting period of one (1) week.* No week shall be counted as a week of unemployment for the purpose of this subsection: . . .

"(2) Unless the individual *was otherwise eligible* for benefits with respect thereto; . . .

"(e) He has within his base year earned wages of not less than two hundred dollars ($200.00) . . . " (Italics ours.)

Pursuant to § 4 of the act, as just quoted, the commissioner promulgated Regulation 13 with reference to registration and claims for benefits as follows:

"As a *condition precedent to any application for benefits,* an unemployed individual shall register for work at an employment office of the Washington State Employment Service Division, and *shall re-register during every calendar week thereafter with respect to which he shall file a claim for benefits or waiting period time.*" (Italics ours.)

As hereinbefore emphasized, Jullin did not establish compliance with subdivision (d) of § 4 of the act (Rem. Supp. 1943, § 9998-104), in that at the time he filed his claim he had not been unemployed for a waiting period of one week. His failure in that respect was obvious to the Division on the very face of Jullin's claim, and the commissioner could not have legally made a finding to the contrary. Jullin also failed to show compliance with the condition prescribed by Regulation 13, in that he never filed a claim for benefits for *waiting period time* nor re-registered therefor.

 The right to unemployment compensation is founded upon the statute, not upon the common law. *MacVeigh v. Division of Unemployment Compensation,* 19 Wn. (2d) 383, 142 P. (2d) 900. The unemployment compensation act is in nature and purpose similar to the workmen's compensation act, as to which we have repeatedly held that the rights and remedies thereunder are purely statutory. *Denning v. Quist,* 172 Wash. 83, 19 P. (2d) 656; *Mattson v. Department of Labor & Industries,* 176 Wash. 345, 29 P. (2d) 675; *Purdy & Whitfield v. Department of Labor & Industries,* 12 Wn. (2d) 131, 120 P. (2d) 858.

 While the unemployment compensation act is remedial in character and, by its express terms (Rem. Rev. Stat. (Sup.), § 9998-102) enjoins a liberal construction of its provisions "for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum," nevertheless, those who claim rights under the act should be held to strict proof of their right to receive benefits provided by the act. Such is the rule followed in this state in cases involving the kindred workmen's compensation act. *Kirk v. Department of Labor & Industries,* 192

Wash. 671, 74 P. (2d) 227; *Clausen v. Department of Labor & Industries,* 15 Wn. (2d) 62, 129 P. (2d) 777.

 It is also the rule in cases involving the workmen's compensation act that the burden is upon the claimant to establish the necessary facts. *O'Toole v. Department of Labor & Industries,* 182 Wash. 202, 46 P. (2d) 388. The same rule applies with equal force to cases arising out of the unemployment compensation act. In *Haynes v. Unemployment Compensation Commission,* 183 S. W. (2d) (Mo.) 77, the supreme court of Missouri stated, in the following paragraph, the proper rule in such cases:

"The Unemployment Compensation Law of our state expressly provides that it must be 'liberally construed to accomplish its purpose to promote security against unemployment.' Sec. 9422, R. S. 1939, as amended, Laws 1941, p. 566, Sec. 1 Mo. R. S. A. While it has been said that the 'unemployment compensation laws are not necessarily designed for the adjustment of rights between employees and employers in the sense that they are adversary litigants' (*S. S. Kresge Co. v. Unemployment Compensation Commission,* 349 Mo. 590, 162 S. W. 2d 838, 841), we think it is apparent that the burden of proof to establish a claimant's right to benefits under the Unemployment Compensation Law rests upon the claimant. *Queener v. Magnet Mills,* 179 Tenn. 416, 167 S. W. 2d 1. An unemployed individual is eligible to receive benefits only if the commission finds that the required conditions have been met. The claimant assumes the risk of non-persuasion and we think the general rule applicable to ordinary court proceedings applies. 'The burden of proof, meaning the obligation to establish the truth of the claim by preponderance of the evidence, rests throughout upon the party asserting the affirmative of the issue. . . . This burden of proof never shifts during the course of the trial.' *Downs v. Horton,* 287 Mo. 414, 230 S. W. 103, 108; *Clapper v. Lakin,* 343 Mo. 710, 123 S. W. 2d 27, 33."

Since, in this case, Jullin did not file a claim in accordance with the provisions of the unemployment compensation act nor conform with the commissioner's regulations, heretofore stated, and since he did not establish the facts necessary to unemployment compensation benefits, his purported claim never attained the proportions of a com-

pleted, valid claim. As to him, therefore, the act furnished no relief and accorded to him no benefits on the claim involved in this proceeding.

The Division, however, proceeding upon a claim which was incomplete and invalid upon its face, assumed to go forward nevertheless and, by a purported "initial determination," authoritatively resolved that benefits were *potentially payable* to Jullin during his "benefit year," on the basis of his "base year" as therein fixed by the Division; and, further, despite the fact that the claim for benefits was invalid upon its face, and despite the fact that the claim was subsequently denied, the Division now takes the position that its "initial determination" nevertheless is valid to the extent and for the purpose of fixing the amount of benefits *potentially payable* to Jullin during the "benefit year," in case Jullin should have made any claim for benefits during that year. Thus, upon an imperfect and initially invalid claim, a definite benefit, envisaging prospective payments at some future time, is conferred upon the claimant and a distinct detriment is imposed upon the employer.

■ ■ While the administration of the unemployment compensation act is entrusted to the commissioner, his administration thereof must be in accordance with the provisions of the act itself and the rules prescribed thereby. Rem. Supp. 1943, § 9998-111a. *Strmich v. Department of Labor & Industries*, 182 Wash. 466, 47 P. (2d) 990. He is a public officer appointed to administer trust funds. Rem. Supp. 1943, §§ 9998-109a, 109b, 109c, 109d. These trust funds are contributed solely and entirely by the employers subject to the act. Rem. Supp. 1943, §§ 9998-107a, 107b. The employers are therefore vitally concerned in the proper administration and disposition of such funds. The commissioner must administer the act justly and fairly, for the benefit of all concerned, in accordance with law, and unless his powers are so exercised his acts are of no effect. In the case of *In re Elvigen's Estate*, 191 Wash. 614, 71 P. (2d) 672, we quoted with approval the following statement from 46 C. J. 1033, Officers, § 290:

"Powers conferred upon a public officer can be exercised only in the manner, and under the circumstances, prescribed by law, and any attempted exercise thereof in any other manner or under different circumstances is a nullity."

The effect of what the Division is attempting to do in this instance is to waive the requirements of the statute by accepting an incomplete and invalid claim, and to establish a potential basis upon which an individual, shown to be immediately ineligible to benefits under the act, may nevertheless in the future receive such benefits payable from a trust fund supplied by the employers. The impropriety of such procedure is clearly demonstrated in the companion case of *In re Baxter, post* p. 935. In the *Baxter* matter the tribunal made a specific finding that "it appears that he [Baxter] became unemployed due to a labor dispute of only two days' duration and returned to work for the appellant [St. Paul & Tacoma Lumber Company, respondent herein]." It also appears in that case that Baxter's claim for benefits was denied by the Division.

Rem. Supp. 1943, § 9998-105, relating to disqualification for benefits, provides:

"An individual shall be disqualified for benefits: . . .

"(f) For any week with respect to which the Commissioner finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed: *Provided* [reciting certain exceptions not shown to exist as to Baxter]."

Despite this disqualifying factor with respect to Baxter, the Division takes the position, as expressed in its brief, as follows:

"In other words, if Baxter became re-employed (as he actually was) shortly after his initial filing and again became unemployed for a week or more during his *benefit year* [as fixed by the Division] and at that time filed a request for the payment of benefits, the general conditions under which *such claim* would be paid would, under the provisions of 6(b) [Rem. Supp. 1943, § 9998-106b], be determined by his *initial determination.*" (Italics ours.)

That statement would seem to constitute the strongest argument against an assent thereto. If an individual is ineligible to receive any benefits at all under his claim, there is no foundation for giving him a status which will permit him in the future to apply for and receive payments computed solely on the basis of an "initial determination" predicated upon a prior invalid claim.

The injustice of the position taken by the Division, so far as the respondent here is concerned, is further demonstrable. Rem. Supp. 1943, § 9998-107c (2), relating to "experience rating" provides:

"Benefits paid to an unemployed individual during any benefit year shall be charged against the account of the employer from whom the individual earned the most wages during his base year. . . ."

In this instance, respondent was the employer from whom Jullin earned the most wages during the "base year" as established by the Division in its "initial determination." Jullin left the employ of the respondent on December 19, 1942, which was during the third quarter of his established "base year." Under the procedure adopted by the Division, any "potential benefits" which might have been paid to Jullin during his entire "benefit year" ending August 17, 1944, would have been computed on the basis of the amount earned by him while employed by the respondent and also would have been chargeable against the account of the respondent. If Jullin had first filed a claim at any time after March 31, 1944, his "base year," *if established at that time,* would not have reached back further than January 1, 1943, and, in consequence thereof, his weekly benefits would not have been computed on the basis of the amount earned by him while employed by the respondent in the last calendar quarter of 1942, nor would respondent's account be charged with any weekly benefit thereafter paid to Jullin. Under the procedure adopted by the Division, however, any such weekly benefits which might have been paid to Jullin between April 1 and August 17, 1944, would still have been computed and paid on the basis of the amount earned while employed by the respondent and would have

been chargeable to respondent's account. The situation would have been even more flagrant had respondent been Jullin's employer during the first quarter of the purported "base year," and his benefits computed on the basis of his earnings during that quarter rather than during the third quarter thereof.

The legal situation with respect to the Division is simply that the Division had no right or power to make any finding or "initial determination" that Jullin's claim was "valid," when the very claim on its face showed that it was incomplete and insufficient, and when the very proceedings taken by the Division in making the "initial determination" disclosed to it not only that the claim was premature (having been filed before the expiration of the necessary waiting period) but also that Jullin had failed to comply with the conditions necessary to establish a *valid* claim. It was incumbent upon Jullin to file a claim which in form was, at least, *prima facie* valid, and to support the claim with substantial compliance with the conditions of eligibility to weekly benefits. In the absence of a claim of that validity the Division had no right to proceed to make an "initial determination," and, upon Jullin's failure to comply with the eligibility conditions, any prior "initial determination" by the Division became ineffective and valueless. To hold otherwise would permit the Division to fix an improper "base year" and "benefit year," to the prejudice of vitally concerned employers, and on such basis pay weekly benefits on future claims filed within such "benefit year," to the prejudice of employers and to the detriment of the fund in which all employers and all employees generally have a vital interest.

The Division makes an earnest plea in support of its interpretation of the act and in support of the procedure followed by it in this instance, on the ground that to destroy or cancel the "initial determination" would (1) cause a delay of *seven days* in the payment of benefits to unemployed individuals, and (2) require the Division to "reprocess," at great labor and expense, all of its records merely for the purpose of making, in each case similar to those involved

here, a new "initial determination" during a "benefit year" already established.

It will be remembered that in this case we are not concerned with weekly benefits actually payable to the claimant upon an established claim, but only with benefits "potentially payable" upon a claim that was invalid upon its face and was never completed.

The matter of delay, suggested by the Division, is one specifically created by the act itself, and brief reflection will supply the reason therefor. The legislature evidently considered it wise and proper that a "waiting period" of one week should intervene the date of "separation from employment" and the filing of a claim for unemployment compensation. If that requirement is found to work a hardship, the remedy should be sought from the legislature, but the requirement should not be overridden by the deliberate action of the Division. As to the matter of additional work and expense on the part of the Division in "reprocessing" claims, that is at least a debatable question. In any event, if the Division takes proper precaution to see that claims which are filed comply with the statute, it will not find itself in the position of having made a useless "initial determination," nor be required to duplicate its work at added expense. Aside from that, however, the question here is not merely one of possible delay, duplication of work, and expense, but whether the act has indeed been administered justly and fairly to all concerned in the proper distribution of a trust fund.

For all the reasons hereinbefore given, the judgment of the superior court is affirmed.

BEALS, C. J., MILLARD, ROBINSON, SIMPSON, and JEFFERS, JJ., concur.

GRADY, J. (dissenting)—In this case we have only a procedural question to determine. The provisions of the unemployment compensation act necessary to be considered are not ambiguous, so no question of interpretation is involved. The controversy between the department and the appellant is over the order in which the various procedural

steps necessary to determine whether an unemployed work-man is entitled to be paid benefits under the act and the amount thereof shall be taken. The act provides various procedural steps and authorizes others to be fixed by regulations prescribed by the commissioner. The whole tenor of the act is to provide a plain, adequate, and speedy method whereby beneficiaries of unemployment insurance may be accorded the relief contemplated by the act at a time of immediate necessity, and if the procedure outlined by it and the regulations prescribed by the commission are followed, this result may be accomplished.

My disagreement with the majority opinion is that it outlines an order of procedure different from what the act and regulations provide, which, if followed, may, as contended by the department, seriously impede the administration of the act and tend to prevent the accomplishment of its purposes, and that it asserts as a basis for the conclusion reached that the claim made by Jullin was invalid on its face, which I do not think is borne out by the record. It may be that the procedural method outlined in the majority opinion would make a better piece of legislation from the standpoint of the employer, but the procedure to be followed and the order in which the successive steps must be taken is for the legislature and not for the courts to determine, even though it may appear to them that the law as framed could be improved upon or may operate unfairly to someone. When a law is found to be constitutional and requires no interpretation to make it effective, there is nothing to be done by the courts but to apply it as it is written to the various factual situations as they arise.

The majority opinion adopts the view that the department must find and conclude that a claimant is entitled to benefits before his base and benefit years can be computed and fixed, which is just opposite to what the act provides.

When a workman ceases to be employed, his first act is to make a claim for benefits. Section 6 (a) of the act provides: "Claims for benefits shall be made in accordance with such regulations as the Commissioner shall prescribe." The commissioner has prescribed that an application for

benefits shall be made in writing at an employment office on such forms as shall be provided by the commissioner. The regulation does not prescribe how soon after unemployment commences a claim must be made. The claim for benefits includes claims for waiting period time. After the first claim for benefits is made, the claimant must file a continued claim for every week thereafter with respect to which he claims benefits. As a condition precedent to the application for benefits, the unemployed workman must register for work at an employment office and must reregister during every calendar week thereafter with respect to which he shall file a claim for benefits or waiting period time.

Jullin did all of this, except he did not reregister or make any certification for either waiting credit or benefits after making his initial claim. He signed the initial claim, but apparently was not required to sign the claim-record card kept by the department as a part of its records. On this record it is indicated on a line numbered 26: "claimant's signature to the above certification," but no space is provided for the claimant to sign. In any event, the failure of the claimant to sign the claim-record card is not jurisdictional and would not affect the validity of the claim he had previously made and signed. When a claim is filed, then Rem. Supp. 1943, § 9998-106b [P. P. C. § 923-21] must be followed. This is set out in full in the majority opinion. In substance, it is this: A representative designated by the commissioner shall take the claim. The unemployment compensation division must promptly do the following things: (1) Make an *initial determination* with respect to whether or not benefits are *potentially* payable; (2) determine the weekly benefit amount payable; (3) determine the maximum amount of benefits *potentially* payable; (4) notify the claimant, his most recently employing unit as stated by him, and any other interested party, of the making of the initial determination. This section of the act provides that:

"The initial determination shall fix the general conditions under which benefits shall be paid during any period of unemployment occurring within the ensuing benefit year."

The section further provides that one who has received an initial determination finding that benefits are potentially payable to him, shall, during his benefit year, receive benefits in accordance with such initial determination with respect to any week as to which he meets the benefit eligibility conditions provided by § 4 of the act, unless it is found that he is disqualified by the provisions of § 5 of the act. It seems quite clear that, in order to get this far, the division must necessarily compute the base year and the benefit year as defined by the act. The act does not provide by express terms nor by any fair implication that the division must make a *final* determination that the claimant is *then* eligible for benefits. This is something the division must determine before the claimant can be *paid* any benefits. But the whole idea seems to be that the claimant starts the departmental machinery in motion when he makes a claim, and it is then that the base and benefit years are to be fixed. If it is later found the claimant is ineligible for benefits, he does not receive any; but his base and benefit years are fixed so that, if at any time within the benefit year he becomes eligible for benefits, they can be promptly determined and paid.

It seems to me that if the legislature intended to have eligibility for benefits finally determined as a first preliminary step before computing the base and benefit years, it would have plainly so provided, but it did not do so. On the contrary, it clearly outlined a procedure by which the base and benefit years were to be computed before the question of eligibility was to be finally determined. There would be no occasion for the use of the terms "initial determination" and "potential benefits" if it were otherwise.

I think all of this is further borne out by the appeal procedure which is provided by the act. When the initial determination is made, the employer may file an appeal therefrom with the commissioner. This appeal may have a twofold aspect. If the appeal is taken with respect to the claim itself, the act provides that benefits shall not be paid to the claimant prior to the final determination of the appeal. If, upon the initial determination, benefits are allowed, but an

appeal is filed relative to the maximum amount of benefits potentially payable or the weekly benefit amount, benefits may, nevertheless, be paid to the extent of the minimum potential benefit amount or weekly benefit amount which the division of unemployment compensation or any party to the appeal shall assert is due the claimant. It thus appears that, if the employer feels that the claimant is not eligible for benefits, he may take an appeal and thus prevent any payment for benefits to the claimant until the appeal is finally determined. When the appeal is taken, the question of eligibility is determined on the appeal. If, however, the employer considers the claimant eligible when the claim is filed, but wishes to contest the maximum amount of benefits to be paid, he may do so. This kind of an appeal does not prevent the payment of benefits, but limits them as above stated.

There is nothing in the act which provides that, if it shall be found that the claimant is not entitled to benefits, the prior action of the division in computing the base and benefit years becomes invalid or that such action shall be disturbed in any way, as concluded by the trial court. If, after a claim for benefits is made, it later is determined that he either was or is not eligible therefor, nevertheless his base and benefit years have been fixed, so that benefits may be paid whenever he becomes eligible during the benefit year, and this process does not have to be repeated each time he makes a claim for benefits. It may be that the amount of a claimant's compensation may be different according to the time or times covered by the base year, and the several employers of an employee might be differently affected according as the base year may be computed, and this may afford an argument that the base year should not be computed until it is determined that a claimant is eligible for benefits; but all of this was for the legislature to determine, and we should not attempt to fix a rule not in accord with that prescribed by the legislature.

The division followed its regulations and the statute. It subsequently developed that Jullin was not eligible for benefits because he did not keep up his registration for

employment. No benefits were paid to him. The division maintained its record of his base and benefit years for future use should the occasion arise. I find nothing in the act which justified the trial court on appeal in requiring the department to efface and nullify this record.

I am unable to find that the claim was invalid upon its face, as stated in the majority opinion. A copy of the claim is in the record. It is on a form prescribed by the commissioner. It contained all of the information required by him. It gave name and address of the claimant, the name of his last employer and the date on which he became unemployed. It stated that he was unemployed, that he was able to work, was available for work, and by it he registered for work. This claim was signed by the claimant. In the section of the act defining "benefit year," it is provided:

"Any claim for benefits made in accordance with § 6 (a) of this act shall be deemed to be a valid claim for the purposes of this section, if the individual has earned wages for employment by employers as provided in § 4 (e) of this act."

In view of all of this, I am unable to concur in the view that the claim was invalid on its face. The claim was made on the form prescribed and met all of the requirements of the statute and the regulations prescribed by the department, and was sufficient to justify the department in proceeding to compute the base and benefit years.

In addition to this, it is well to note that the act does not provide for any review by the courts of the sufficiency of a claim for benefits, and I think it follows that such question is one exclusively for the department to determine. The right of a claimant to be awarded benefits is subject to judicial inquiry upon appeal, but not the sufficiency of the content of the claim made therefor.

The judgment should be reversed.

BLAKE and MALLERY, JJ., concur with GRADY, J.

PER CURIAM.—After the opinion in this case was filed, respondent presented its application to supplement the opinion, asking that the same be amended by an order fixing a reasonable fee for respondent's attorneys.

The court thereafter, on the 6th day of July, 1945, entered its order fixing the attorneys' fee for respondent's counsel in the sum of $250, and then directed that the parties appear before the court, sitting *En Banc,* on the 17th day of July, 1945, to present their respective theories as to whether or not the attorneys' fee allowed should be paid out of the unemployment compensation administration fund.

And the matter having come on regularly before the court sitting *En Banc* on the day referred to, and the court having heard the argument of counsel for the respective parties, and having examined the briefs filed herein, it is the judgment of the court that compensation allowed to respondent's counsel above referred to for services rendered on the appeal of the above-entitled cause to this court is a proper charge against the unemployment compensation fund, and that the amount be paid out of that fund.

BLAKE and MALLERY, JJ., dissent.