[No. 34501.   *En Banc.*   January 8, 1959.]

DELOS WILKIE, *Appellants,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

MALLERY, J., dissents.

[1]Reported in 334 P. (2d) 181.

*Roy E. Jackson* and *Thor P. Ulvestad,* for appellant.

*The Attorney General* and *Fred R. Butterworth, Assistant,* for respondent.

OTT, J.—August 8, 1953, Ed Ernst was repairing his caterpillar tractor, which he had been using in his logging operation. He requested Delos Wilkie, who was working on his resort property nearby, to assist him. The repair of the tractor required that it be moved to the Wilkie premises, where his shop and tools were more readily usable. In the course of the repair, Wilkie was injured.

Wilkie filed a claim for his injuries with the department of labor and industries. The supervisor's denial of the claim was sustained by the board of industrial insurance appeals. Wilkie appealed to the superior court. Prior to the trial, the department moved to dismiss the appeal upon the ground that the evidence in the departmental record was, as a matter of law, insufficient to establish a cause of action. The motion was denied, and the cause proceeded to trial. The jury returned a verdict for Wilkie. The department's motion for judgment notwithstanding the verdict was granted, and, from a judgment of dismissal based thereon, Wilkie has appealed.

Appellant contends that the adjudication of the sufficiency of the evidence to submit the cause to the jury cannot be raised by a motion for judgment notwithstanding the verdict, since that issue was determined by the pretrial motion for dismissal.

In *Roe v. Standard Furniture Co.,* 41 Wash. 546, 549, 83 Pac. 1109 (1906), in which a similar argument was made, this court said:

" . . . If the rule of practice contended for by appellant as pertinent to a motion for judgment *non obstante veredicto* be approved, then no available method would exist by which a trial court could correct its own mistake

in erroneously submitting a case to the jury, other than that of granting a motion for a new trial, and such new trial would have to be granted even though it was indisputably apparent that a plaintiff had no possible right of recovery.

. . .

"Assuming that the trial court erred in denying respondent's motion for a directed verdict, if it had thereafter entered final judgment upon the verdict returned, this court upon an appeal based on proper assignments of error, would not only order a reversal, but would also direct a final judgment dismissing the action. This being true, the trial court should be permitted to make the order without the necessity of an appeal."

See, also, *Tonkovich v. Department of Labor & Industries*, 31 Wn. (2d) 220, 195 P. (2d) 638 (1948); *Perry v. Beverage*, 121 Wash. 652, 209 Pac. 1102, 214 Pac. 146 (1922); *Kieburtz v. Seattle*, 84 Wash. 196, 146 Pac. 400 (1915).

We adhere to the principles announced in the cited cases, and find no merit in this contention.

Appellant Wilkie next contends that whether an employer-employee relationship existed, within the contemplation of the workmen's compensation act, is a factual question, and that the jury's finding in the instant case that the relationship existed is supported by the evidence.

Since Ernst died August 28, 1953, the only evidence with reference to the alleged employment is contained in the testimony of appellant, which is as follows:

" 'A. I was building a rest room down at the far end of the yard, and after lunch, approximately 1:00 o'clock, 1:15, I was walking down there when Mr. Ernst stopped me. I had to go by his cabin, or near his cabin, and he asked me if I would go over and help get the track on the cat. By "going over," he was logging about 300 feet across the little creek from where the yard is, and I went over, walked over with him, and he was in about, oh, 18 inches, of mud, and I shoveled the mud away from the back sprocket and got the chain on it, and started it up and finally got the track on, and I told Eddie he had better run it into the yard where we could clean it and see what was wrong, and he brought it over to the high piece of ground near the rest rooms I was building, and in examining, I found the front idler, the casting, was broke, that holds it down onto the rail, I think

they call it, and so I had an arc welding outfit there, and I started up my generator and he welded this front casting to hold it down. He had a chain around it and it was giving, and he couldn't keep it tight. After he got that welded, he run down into some brush to try it out, and the track come off again, and he backed it over, and we got it on the second time. It was also in the mud, and we got it on the second time, and he run it back into the yard on this flat piece of ground, and I said, "Eddie, there is only one thing to do, and that is to split the track and take out a section," — a pad, they call them, — one about a foot long, and, — because you couldn't tighten it any more. The tightener was out to the end, so he helped me split the track. By "splitting," you take out the master pin, and take the back off the rollers, and idlers, — and I went and got my gas outfit, started it up, and I cut the section out, and then we had to put the pin back in and bring it back up over the top again, and when we was trying to get the master pin back in, is when I got hurt. . . . Q. Did you have any understanding with him as to the amount you were to be paid, if any, at that time, or was that just something that you were—A. There's kind of a going set rate up there. We do work for anybody, and charge them $2 an hour, and that's what he paid on the gin pole when I helped operate on that. Q. But you had no specific conversation as to work on that thing? A. No. . . . Q. You say you used your own welding equipment? A. I furnished the equipment. Mr. Ernst done the cutting and welding. Q. Was there any other of your equipment being used, if you remember? A. Well, I don't. Might have been a wrench or two. I don't remember. No big equipment was used. I have no big equipment up there.' "

RCW 51.08.070 [cf. Rem. Rev. Stat. (Sup.), § 7675] defines an employer as " . . . any person . . . who contracts with one or more workmen . . . in extrahazardous work."

RCW 51.08.180 [cf. Rem. Rev. Stat. (Sup.), § 7675] defines a workman as " . . . every person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his employment; . . ."

■ From the evidence, it is apparent that Wilkie was engaged in extrahazardous work. The factual determination which the jury was called upon to make was whether

or not a contract of employment, establishing the relationship of employer-employee, existed at the time of the injury. Whether a contract of employment existed must be determined from the evidence. There was evidence that, upon a previous occasion, work had been performed for Ernst by the appellant, and that he was paid at the rate of two dollars an hour, although there had been no previous express agreement for payment between the parties. There is also evidence that Wilkie had formerly followed the mechanic's trade and, since that time, had performed some mechanical work in the vicinity, and that the rate of pay for such work in that locality was two dollars an hour. The evidence further discloses that it was at the request of Ernst that Wilkie performed the services, and that he expected to be paid.

■■ The consideration of a motion for judgment notwithstanding the verdict involves no element of judicial discretion, and it will be granted only when the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to sustain the verdict. *Kirkpatrick v. Department of Labor & Industries*, 48 Wn. (2d) 51, 290 P. (2d) 979 (1955). The evidence in the instant case, and the reasonable inferences which could be drawn therefrom, were sufficient to sustain the verdict of the jury. The court erred in deciding, as a matter of law, that the facts did not establish an employer-employee relationship.

Respondent relies upon *Hillestad v. Industrial Ins. Comm.*, 80 Wash. 426, 141 Pac. 913 (1914), and *Kirk v. Department of Labor & Industries*, 192 Wash. 671, 74 P. (2d) 227 (1937).

■ The existence of a contract of employment can be established by the conduct of the parties and the surrounding facts and circumstances. The cited cases do not negative this established rule. In the *Hillestad* case, the employment of a thirteen-year-old boy in extrahazardous work was forbidden by statute, and, therefore, the court held that the relationship of employer-employee, as contemplated by the act, could not exist. Further, the court stated [p. 430]:

" . . . We are going no further than to hold that, under the facts in this case, the boy was not a workman within the meaning of the law."

In the *Kirk* case, the trier of the facts found that the relationship of employer-employee between Kiser and Kirk did not exist at the time of the injury and that, hence, Kirk did not come under the act. This court sustained the findings of the trier of the facts for the following reason:

"In reviewing the case, it is to be borne in mind that the statute, Rem. Rev. Stat., § 7697 [P. C. § 3488], makes the decision of the department *prima facie* correct. The decision of the department was confirmed by the superior court. *The weight of the evidence supports the departmental decision.*" (Italics ours.)

The cited cases are not apposite to the issue here presented. In the instant case, even though the jury were instructed that the findings of the department were *prima facie* correct, the jury, as the triers of the facts from the evidence, found that, when Ernst solicited the services of Wilkie, he intended to pay a reasonable wage for the services rendered; that Wilkie expected to be paid such sum as the services reasonably warranted; that Ernst thereby became an employer and Wilkie became a workman performing extrahazardous duties, and that the relationship of employer and employee existed at the time Wilkie was performing his services and when he was injured.

■ It could well be, as contended by respondent, that these incidental employment contracts were not intended by the legislature to come within the purview of the act. However, we find no minimum employment exclusionary provision expressed in the act, and, if such was intended by the legislature, it is a matter for specific legislative enactment.

The trial court erred in entering judgment notwithstanding the verdict. The judgment is reversed, and the cause remanded with instructions to enter judgment upon the verdict of the jury.

HILL, C. J., DONWORTH, FINLEY, WEAVER, ROSELLINI, FOSTER, and HUNTER, JJ., concur.

MALLERY, J. (dissenting)—I agree that Ernst was a logger, and that he employed Wilkie to repair his tractor. I do not agree that a logger's tailor, doctor, cook, or repairman is engaged in the extrahazardous employment of logging.

I dissent.